# WILBUR L. TAYLOR, ADMINISTRATOR OF ESTATE OF RONALD E. HOLLEY, v. AMERICAN NATIONAL INSURANCE COMPANY.

117 N. W. (2d) 408.

October 11, 1962—No. 38,570.

*Alderson, Catherwood, Kelley & Ondov,* for appellant.
*Wallace C. Sieh,* for respondent.

NELSON, JUSTICE.

This action was commenced June 1, 1960, by Wilbur L. Taylor as administrator of the estate of Ronald E. Holley to recover benefits under health and accident policies issued to Holley by defendant, American National Insurance Company.

No testimony appears in the record. The parties stipulated to the facts, attaching exhibits to their stipulation and stipulating also that there is no further evidence material or relevant to the issues.

The facts as stipulated are: On May 22, 1954, defendant issued to Ronald E. Holley two policies—the first in general providing for indemnity due to hospital confinement from sickness or accident and the other in general providing for indemnity due to loss for surgical expenses resulting from accidental bodily injury or sickness.

When the policies were first issued the premiums thereon were payable monthly subject to a 10-day grace period. All premium payments were made by Holley on or before the due dates or within the 10-day grace period following such dates during the year 1954. Thereafter, Holley paid his premiums quarterly with the exceptions hereafter noted. He submitted the premiums due April 22, 1958, on May 16, 1958, approximately 14 days after the 10-day grace period originally provided for in the policies had expired; he submitted the premiums due January 22, 1959, on February 13, 1959, approximately 12 days after the 10-day grace period had expired; and he submitted the premiums due January 22, 1960, on February 12, 1960, approximately 13 days after the 10-day grace period had expired. On these occasions the policies were reinstated pursuant to Standard Provision 3 contained in each policy and the reinstatements became effective May 16, 1958; February 13, 1959; and February 12, 1960.

Standard Provision 3 provides that acceptance of a premium after default reinstates a policy but only to cover such accidental injury or sickness as may begin more than 10 days after the date of reinstatement. The policies also provide that they are renewable at defendant's option.

On February 25, 1960, Holley consulted Dr. P. J. Schneider of Adams, Minnesota, with respect to a bilateral inguinal hernia which had then existed for at least 18 months. (The hernia on the left was of 10 years' duration.) On February 25, 1960, a bilaterial inguinal herniorrhaphy was performed by Dr. David P. Anderson of Austin and Dr. Schneider. Holley remained in the hospital until March 5, 1960, at which time he died, apparently due to coronary occlusion or a massive pulmonary embolus.

Defendant denied coverage, claiming that the policies had lapsed when the premiums due January 22, 1960, were not paid within 10

days thereafter and that the policies therefore did not cover hospitalization and surgery for hernia which had its inception before their reinstatement on February 12.

Plaintiff claims that by virtue of Minn. St. 62.0025, subd. 2(3), which became effective April 12, 1957, a 31-day grace period was incorporated into the policies upon defendant's acceptance of the renewal premiums due April 22, 1957, and the insured never was in default.

Statutory regulation of accident and health insurance originated with L. 1913, c. 156. Section 3 of that act required inclusion of specified standard provisions in policies covering such insurance. It remained in effect until passage of L. 1957, c. 489, which was approved April 12, 1957. Minn. St. 62.0025 contains the standard provisions now required, including the 31-day grace period prescribed by § 62.0025, subd. 2(3).

Plaintiff claims that defendant's acceptance of the renewal premiums due April 22, 1957, incorporated not only the 31-day grace period into the policies but all other provisions of L. 1957, c. 489, also. He points to c. 489, § 4, subd. 2(2), (now Minn. St. 62.0025, subd. 2[2]), which requires policies to contain a standard provision stating in part: "No claim for loss incurred or disability (as defined in the policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy."

The trial court found that the policies covered plaintiff's claims and ordered judgment. Defendant appeals from the judgment.

The only question presented by this appeal is whether § 62.0025, subd. 2(3), (L. 1957, c. 489, § 4, subd. 2[3]), is controlling. It provides that health and accident policies shall contain:

"A provision as follows:

"GRACE PERIOD: A grace period of . . . (insert a number not less than '7' for weekly premium policies, '10' for monthly premium policies and '31' for all other policies) days will be granted for the

payment of each premium falling due after the first premium, during which grace period the policy shall continue in force.

\* \* \* \* \*

"A policy in which the insurer reserves the right to refuse any renewal shall have, at the beginning of the above provision,

"Unless not less than five days prior to the premium due date the insurer has delivered to the insured or has mailed to his last address as shown by the records of the insurer written notice of its intention not to renew this policy beyond the period for which the premium has been accepted."

Defendant contends that its acceptance of the renewal premiums due April 22, 1957, did not make Minn. St. c. 62 a part of the policies involved, but rather that the policies were in effect continuing contracts and renewal payments therefore made no change in the 10-day grace period which the policies originally provided.

The policies were renewable only at defendant's option when L. 1957, c. 489, became law. It is clear that the parties were making a new contract upon defendant's acceptance of the premiums due April 22, 1957, and we must agree with plaintiff's contention that the statutory law in force and effect at the time became part of the contract as though expressly written therein and that the policy must be considered as containing those requirements. Minn. St. 62.0025, subd. 3(9), provides for a standard provision stating:

"Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the insured resides on such date is hereby amended to conform to minimum requirements of such statutes."

Section 62.0025, subd. 2(3), was intended to secure the insured an extension of time for payment of premiums in the event that an insurer who has retained the privilege of refusing to renew a policy does not exercise such privilege by giving notice as required by this section.

In Western New York Medical Plan, Inc. v. Wikler, 8 App. Div. (2d) 988, 189 N. Y. S. (2d) 61, the New York court was faced with

a similar problem where a statutory amendment to the insurance laws imposed a greater burden than it previously had by adding services of "licensed podiatrists" to those of doctors for which the insurer was obligated to indemnify subscribers. The essence of the holding is that the amendment was mandatory in effect and is to be read into all medical indemnity contracts even though the contracts were issued in a form which limited coverage to care provided for by physicians and that it is applicable to contracts which were voluntarily issued or renewed after the amendment took effect.

It is clear from the facts in the instant case that the plaintiff on several occasions was accepted on a renewal basis without reservation. Defendant by its acceptance of the premiums after expiration of the 10-day grace period rejected, at least by implication, the notion that it did not consider the 31-day grace period applicable.

On each reinstatement or renewal of the policies, any statutes or amendments pertaining to such policies and enacted after their issuance are incorporated into the new policies. We therefore conclude that the insured was entitled to the 31-day grace period and that the statute is operative as to him.

The judgment is affirmed in accordance with this opinion.

Affirmed.