The **HERTZ CORPORATION**,
Respondent,

v.

**STATE FARM MUTUAL INSURANCE COMPANY**, petitioner, Appellant.

No. C3–96–2050.

Supreme Court of Minnesota.

Jan. 28, 1998.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, Linc S. Deter, Brett W. Olander & Associates, St. Paul, for appellant.

Michael A. Koziol, Ditzler & Koziol, Minneapolis, for respondent.

## OPINION

GARDEBRING, Justice.

This case involves the application of the Minnesota No–Fault Act in the context of rental cars. Specifically, we are asked to determine whether a self-insured rental car agency may meet its obligations under the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71(1996) ("No–Fault Act"), by providing liability coverage only in the event that the renter or operator of the rented vehicle does not have other liability coverage arising from his or her own automobile policy.

Jeffrey Powers rented an automobile from Hertz in August 1994. While driving the rental car, he was involved in an accident, which gave rise to negligence claims against him for property damage and personal injury. At the time of rental, Powers declined to purchase the Liability Insurance Supplement (LIS), which, for an additional fee, provided full liability coverage for automobile renters. The rental agreement provided that:

If you do not purchase liability insurance supplement (LIS) * * * at the commencement of the rental and an accident results from the use of the car, your insurance and the insurance of the operator of the car will be primary. This means that Hertz will not grant any defense or indemnity protection under this paragraph if either you or the operator of the car are covered by any valid and collectible automobile liability insurance, whether primary, excess or contingent, with limits at least equal to the minimum required by the applicable state financial responsibility law. If neither you nor the operator of the car have such insurance, Hertz will grant you and any authorized operator of the car limited protection under the terms and conditions stated in subparagraphs 10(a) above and 10(c) below.

The intended import of this provision was apparently to make the Hertz self-insurance coverage effective only if the renter or operator of the rented vehicle had no automobile liability insurance.

Powers had personal automobile liability insurance through State Farm for coverage on his 1985 Ford Bronco II. Powers renewed his State Farm policy on March 22, 1994, for a six-month term and the policy was in effect at the time of the accident. The State Farm policy, which has liability coverage with limits at $50,000 per person and $100,000 per occurrence, provided: "The liability coverage extends to the use, by an insured, of a * * * non-owned car." The policy further stated that "[i]f a * * * *non-owned* car has other vehicle liability coverage on it, then this coverage is excess."

Hertz brought a declaratory judgment action against State Farm, asserting that State Farm has the primary duty to defend and indemnify Powers against the claims arising from the accident involving the rented vehicle. In granting Hertz's motion for summary judgment, the trial court held that the Hertz rental agreement was a valid and enforceable contract that did not provide Powers with liability coverage at the time of the accident. It also held that the Hertz rental agreement did not violate the No–Fault Act because it guaranteed liability coverage if the renter or operator was not insured. It concluded that Minn.Stat. § 65B.49, subd. 3(3)(d), the statute dictating priority of coverage, did not apply because Hertz did not provide liability coverage at all on these facts. The trial court further concluded that Minn.Stat. § 65B.49, subd. 3(3)(d) did not apply because it took effect on August 1, 1994, after the March 1994 renewal date of the Powers' State Farm policy. Finally, the trial court held that State Farm, and not Hertz, was responsible for defending and indemnifying Powers for the claims arising out of the accident.

The court of appeals affirmed the trial court, holding that the Hertz rental agreement satisfied the purpose of the No–Fault Act because Hertz provided liability coverage in the event that the renter or operator did not have other automobile liability insurance. Because the court of appeals held the Hertz rental agreement was valid and enforceable, it did not reach the issue of priority of coverage under the No–Fault Act. State Farm now appeals, arguing that the Hertz rental

agreement violates the No–Fault Act, because Hertz, a self-insurer, was required to maintain liability coverage on the vehicles that it owns. We reverse.

■ In our review of the summary judgment, we must determine "whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Interstate Fire & Cas. Co. v. Auto–Owners Ins. Co.*, 433 N.W.2d 82, 84 (Minn.1988). Because the facts are undisputed, this case raises only issues of statutory and contract interpretation, which are questions of law subject to de novo review. *Garrick v. Northland Ins. Co.*, 469 N.W.2d 709, 711 (Minn.1991).

The No–Fault Act requires that every Minnesota automobile owner maintain a "plan of reparation security," with specific, statutorily set minimum benefits, including liability coverage. Minn.Stat. § 65B.48, subd. 1; *see also* Minn.Stat. § 65B.49, subd. 3(1) (stating the minimum benefits required). That obligation may, of course, be met either by the purchase of a commercial automobile liability insurance policy under Minn.Stat. § 65B.48, subd. 2, or by qualification as a self-insured entity, under Minn.Stat. § 65B.48, subd. 3. In this case, Hertz met its obligation by seeking and receiving the authorization of the commissioner of commerce to operate as a self-insured entity. In seeking that approval, Hertz agreed to "discharge fully and promptly all payments and obligations which are now due or shall become due under the provisions of the Minnesota No–Fault Automobile Insurance Act and amendments thereto."

■ State Farm asserts that Hertz's rental agreement violates the No–Fault Act because it allows Hertz to provide "contingent" liability coverage on vehicles it owns, although Hertz is statutorily required, as a self-insured owner of the vehicles, to maintain liability coverage, regardless of whether the renter or operator of a rented vehicle is otherwise insured. In response, Hertz argues that there is no violation of the No–Fault Act because there are no circumstances under which a Hertz vehicle would be uninsured. We disagree. A self-insured car rental agency does not meet its obli-

gations as an automobile owner under the No–Fault Act by thrusting upon the renter its responsibility to provide liability coverage—that is, by providing liability coverage only in the event that the renter is *without* liability coverage.

The statutory provisions at issue—Minn. Stat. §§ 65B.48, subd. 1 and 65B.49, subd. 3(2)—do not on their face require that an automobile owner maintain coverage that is not contingent upon the presence of other coverage. Nevertheless, it is inconsistent with the general purpose of the No–Fault Act to read the statute in the manner advocated by Hertz. Hertz's interpretation of the Act would create a practical exemption to the broad statutory mandate that all automobile owners carry liability insurance, an exemption nowhere evident in the language of the statute.

Further, the distinction relied upon by Hertz and the court of appeals, that the statutory requirements on Hertz are different because it is self-insured, is contrary to our reading of the NoFault Act in other cases. We have said that "[s]elf-insurance is the functional equivalent of a commercial insurance policy. * * * The purpose of either form of insurance is to compensate victims appropriately. The certificate filed with the commissioner [of commerce] is the functional equivalent of an insurance policy." *McClain v. Begley,* 465 N.W.2d 680, 682 (Minn.1991). Further, in his concurring opinion in *McClain,* Justice Simonett concluded that, in considering the application of the No–Fault Act to self-insureds, we should "treat the self-insurer as if it had purchased a policy of auto liability insurance for each of its vehicles with itself as the named insured. Such a policy, if purchased, would contain an omnibus clause extending coverage to permissive drivers as additional unnamed insureds." *Id.* at 684. Applying this conceptual approach here, one could identify Powers as a permissive driver of the rented vehicle, whose liability would be fully covered by virtue of the omnibus clause.[1]

■■■ Further, we find no merit in Hertz's argument that this construction of the No–Fault Act violates its freedom of contract. Legislation may impact contractual obligations, if certain conditions are met. Generally speaking, "[t]he federal constitutional prohibition against contract impairment, U.S. Const., art. I, § 10, cl. 1, has been construed to mean that the state reserves some power to modify contract terms when the public interest requires." *Christensen v. Minneapolis Mun. Employees Retirement Bd.,* 331 N.W.2d 740, 750 (Minn. 1983). The legislature, therefore, can alter contract terms by enacting statutes as long as the legislation is "necessary to meet a broad and pressing social or economic need, if the legislation is reasonably adopted for the solution of the problem involved, and if it is not over broad or over harsh." *Id.* (quoting *White Motor Corp. v. Malone,* 599 F.2d 283, 287 (8th Cir.1979)).

The purposes of the No–Fault Act are spelled out in Minn Stat. § 65B.42: to "relieve the severe economic distress of uncompensated victims"; to prevent overcompensation; to assure prompt payment; to "ease the burden of litigation"; and to correct imbalances and abuses in the automobile accident liability system. That these are legitimate public purposes is unquestionable, and a statutory scheme the linchpin of which is a requirement that each automobile owner carry liability coverage is not either harsh or overly broad.

This court has stated, in the context of a No–Fault Act case, that "contract provisions which conflict with statutory law will not be enforced." *Roering v. Grinnell Mut. Reinsurance Co.,* 444 N.W.2d 829, 833 (Minn. 1989). We have also stated that "an insurer's liability is governed by the contract between the parties *only as long as coverage*

---

1. In *McClain,* the rental car agency attempted to shift all financial liability to the renter through a provision in the rental agreement that provided that the renter was responsible for insuring the rental car. 465 N.W.2d at 681. Here, Hertz has attempted a similar shift of responsibility, but has agreed to provide coverage if the renter does not have liability coverage through a policy on another automobile. The Hertz approach is different in scope than that of the rental car agency in *McClain,* but its fundamental aim is the same—to avoid the statutory obligations of the No Fault Act.

*required by law is not omitted and policy provisions do not contravene applicable statutes."* Streich v. American Family Mut. Ins. Co., 358 N.W.2d 396, 399 (Minn.1984) (emphasis added). We conclude that the provision of the rental agreement purporting to limit Hertz' liability obligation to situations in which there is no other coverage, contravenes the No–Fault Act and is, therefore, unenforceable.[2]

Because we hold that Hertz's attempted limitation of coverage is unenforceable, we must determine which insurance coverage is primary in this case. We begin with the consideration of Minn.Stat. § 65B.49, subd. 3(3)(d), a statutory amendment to the No–Fault Act which became effective on August 1, 1994. *See* Minn.Stat. § 645.02 (1996). Minn.Stat. § 65B.49, subd. 3(3)(d) (1996) states that:

> (3) Every plan of reparation security shall be subject to the following provisions which need not be contained therein:
>
> * * * *
>
> (d) Except as provided in subdivision 5a,[3] a residual liability insurance policy shall be excess of a nonowned vehicle policy whether the nonowned vehicle is borrowed or rented, or used for business or pleasure. A nonowned vehicle is one not used or provided on a regular basis.

Hertz argues that Minn.Stat. § 65B.49, subd. 3(3)(d) does not apply to the instant case because (1) Powers' State Farm policy, which was effective at the time of the accident, was renewed prior to the effective date of this statutory amendment and (2) the statutory amendment only applies to insurance "policies" and not to self-insurers. Hertz further argues that State Farm's "other insurance" provision is not applicable here, because, as a self-insurer, its reparation security is simply not "other insurance." For the second proposition, Hertz asserts that "a certificate of self-insurance is a contract with the state to protect the public, whereas an automobile liability insurance policy is a contract with the insured to provide indemnity."

State Farm argues that the statutory amendment does apply because, according to Hertz's application for self-insurance, Hertz obligated itself to "discharge fully and promptly all payments and obligations which are now due or shall become due under the provisions of the Minnesota No–Fault Automobile Insurance Act and amendments thereto." State Farm further argues that self-insurance is the equivalent of an insurance policy, and the statutory amendment cannot be found inapplicable simply because it uses the word "policy," rather than the broader term "plan of reparation security."

■ We have stated that "the general rule is that upon each renewal an entirely new and independent contract of insurance is created and is governed by the laws in effect on the date of renewal." *Hauer v. Integrity Mut. Ins. Co.*, 352 N.W.2d 406, 408 (Minn. 1984). However, "[o]n each reinstatement or renewal of policies, any statutes or amendments pertaining to such policies and enacted after their issuance are incorporated into the new policies." *Id.* (quoting *Taylor v. American Nat'l Ins. Co.*, 264 Minn. 21, 25, 117 N.W.2d 408, 411 (1962)). Therefore, Hertz is incorrect in its assertion that Minn.Stat. § 65B.49, subd. 3(3)(d) does not apply because it became effective after Powers renewed his State Farm policy.

■ State Farm is correct in its contention that Hertz's application for self-insurance required that Hertz comply with the No–Fault Act in its entirety and with any amendments enacted in the future. Also, as previously stated, neither this court nor the legislature has provided that self-insured entities should be treated any differently from other insurers, and for that reason Hertz's assertion that the statutory amendment only applies to third-party insurers is mistaken. Therefore, we conclude that Minn.Stat. § 65B.49, subd. 3(3)(d) is applicable to deter-

---

**2.** If our interpretation of the No–Fault Act is deemed incorrect by the legislature, and rental car agencies are to be treated differently than all other automobile owners, the legislature is, of course, free to clarify the statute at any time.

**3.** Subdivision 5a provides that every plan of reparation security insuring a natural person must cover damage to rented automobiles.

mine which coverage should be deemed primary.

▮ In applying Minn.Stat. § 65B.49, subd. 3(3)(d) to the instant case, we conclude that the Hertz self-insurance is primary. The State Farm policy is secondary under the statute, in excess of the Hertz coverage.

Even if this court did not apply Minn.Stat. § 65B.49, subd. 3(3)(d) to this case, the Hertz coverage would still be deemed primary under the common-law "closest to the risk" doctrine. Under our previous cases, to determine which coverage is primary we applied the "closest to the risk" test, in which we ask:

(1) Which policy specifically described the accident-causing instrumentality?

(2) Which premium is reflective of the greater contemplated exposure?

(3) Does one policy contemplate the risk and use of the accident-causing instrumentality with greater specificity than the other policy—that is, is the coverage of the risk primary in one policy and incidental to the other?

*Interstate Fire & Cas. Co.*, 433 N.W.2d at 86.

Applying these factors to this case, the Hertz self-insurance policy specifically describes the rental vehicle involved in the accident because Hertz is the owner and its self-insurance is specifically available to cover the vehicle at issue, while Powers' State Farm policy only describes Powers' personal automobile. As to the second factor, because Hertz chose to self-insure, it avoided the payment of premiums to cover its liability. However, it is clear that Powers' State Farm policy did not contemplate primary coverage for more than damage to a rental vehicle, and its premiums are reflective of that fact. In addressing the third and final factor, the State Farm policy specifically states that its non-owned vehicle coverage is excess and incidental to any other policy covering the vehicle. While Hertz attempts to shift primacy to the State Farm policy through its rental agreement, Hertz's self insurance must provide liability coverage for damages caused by the use of vehicles it owns and offers for rent. Therefore, Hertz's self-insurance coverage is primary even under common law principles.

In summary, Hertz cannot contract away its primary obligations under the No-Fault Act by limiting its liability coverage to situations where no other coverage exists. Therefore, Hertz must provide primary liability coverage for the damages resulting from Powers' accident while driving the rental car owned by Hertz.

Reversed.

BLATZ, Justice (concurring specially).

I concur in the result of the majority decision. The legislature clearly set forth in Minn.Stat. § 65B.49, subd. 3(3)(d) that "a residual liability insurance policy shall be excess of a nonowned vehicle policy." This statutory amendment to the No-Fault Act was effective on August 1, 1994. The statute requires that Hertz's nonowned vehicle policy be deemed primary in providing Powers with liability coverage. This statutory amendment was effective the day before Powers rented the Hertz vehicle, and, therefore, Hertz is bound by its mandates. While I do not agree with all of the other legal analysis and conclusions reached by the majority, Minn.Stat. § 65B.49, subd. 3(3)(d) is dispositive of this matter. Therefore, I concur in the result.

KEITH, Chief Justice (concurring specially).

I join in the special concurrence of Justice Blatz.

PAGE, Justice (dissenting).

I respectfully dissent. The court's decision, which allows the renter of a rental car, who has his or her own liability insurance coverage and who declines to purchase the rental car company's liability insurance supplement to escape responsibility for the renter's involvement in an accident with the rental car, is wrong, fundamentally unfair, and poor public policy. What purpose is served by allowing the renter and the renter's insurance company to avoid responsibility for the renter's action? I would suggest none. To the extent that it is asserted that this result

is necessary in order to fulfill the purposes of Minnesota's No–Fault Automobile Insurance Act, that simply is not the case. The purpose of the No–Fault Act is "[t]o relieve the severe economic distress of uncompensated victims of automobile accidents." Minn.Stat. § 65B.42(1) (1996). On the facts before us, that purpose is met and will always be met. The terms of the rental agreement at issue make clear that under any circumstances "[i]f neither [the customer] nor the operator of the car have [liability] insurance," Hertz will provide coverage. Thus, no "victim," injured as a result of an accident with one of Hertz's rental cars, will remain "uncompensated."

Finally, the result reached today is poor public policy. If Hertz cannot rely on its customers to either provide their own liability insurance protection or, at the time of rental, purchase Hertz's liability insurance supplement, the cost of that protection is likely to be passed on by Hertz to all of its rental car customers. There is no sound reason why individual renters should not be required to bear the cost of their own liability insurance protection.

Therefore, I dissent.