**In re ANC RENTAL CORPORATION, INC., et al., Debtors.**

**No. 01–11200MFW.**

United States Bankruptcy Court, D. Delaware.

April 28, 2006.

Eric J. Bronstein, Elliott Reihner Siedzikowski & Egan, Blue Bell, PA, Ian J. Gazes, Gazes LLC, Janice M. McAvoy, Fried Frank Harns Shriver & Jocobson, New York, NY, Roland Gomez, Joseph Grey, Thomas G. Whalen Jr., Stevens & Lee, P.C., James E. Huggett, Harvey, Pennington Ltd., Sheldon K. Rennie, Fox Rothschild O'Brien & Frankel LL, Michael David Debaecke, Mark J. Packel, Elio Battista, Jr., William J. Burnett, Bonnie Glantz Fatell, Jason W. Staib, Elizabeth A. Wilburn, Blank Rome LLP, Kevin J. Connors, Marshall Dennehey Warner Coleman & Goggin, Joseph H. Huston Jr., Wilmington, DE, Frank S. Potts, Columbia, SC, for Debtors.

### *MEMORANDUM OPINION* [1]

MARY F. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Motion of Marjorie Joan Martin ("Martin") for Allowance and Immediate Payment of

---

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

Administrative Claim (the "Motion"). The Liquidating Trust of ANC Rental Corporation, Inc. (the "Trust") opposes the Motion. For the reasons set forth below, the Court will deny the Motion.

## I. BACKGROUND

On November 13, 2001, ANC Rental Corporation, Inc. ("ANC") and Alamo Rent–A–Car, LLC ("Alamo") (collectively "the Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code together with several other subsidiaries. Prior to the filing, on July 1, 2001, Martin rented a car from Alamo. On July 14, 2001, while driving the rental car, Martin was involved in an accident in Minnesota with another vehicle. The occupants of the other vehicle were seriously injured, two fatally.

Post-petition, on or about April 10, 2002, representatives of the other parties to the accident (the "Plaintiffs") filed suit in Minnesota against Martin. In April 2003, the Debtors stipulated to relief from the stay to permit the Plaintiffs to name the Debtors as defendants in the Minnesota suit. As a result, the Plaintiffs filed an amended complaint against Martin and the Debtors. Martin and the Debtors answered the amended complaint and filed cross-claims against each other for indemnity.

On September 24, 2003, after trial, the jury returned a $2.5 million verdict in favor of the Plaintiffs, finding Martin and the Debtors jointly and severally liable. On October 31, 2003, the Minnesota Court held that the Debtors were liable to Martin for indemnity and dismissed the Debtors' cross-claim against Martin.

In January 2004, Martin paid the Plaintiffs $2.44 million in full settlement of the judgment. On March 12, 2004, Martin filed an administrative claim in the Debtors' bankruptcy cases in that same amount. On March 24, 2006, Martin filed the instant Motion for allowance and payment of that administrative claim.

In the interim, this Court confirmed the Debtors' Plan of Reorganization on April 15, 2004. The Trust is authorized to object to claims and to make distributions to creditors pursuant to the Plan. The Trust filed an objection to Martin's Motion on April 20, 2006, and a hearing was held on the Motion on April 24, 2006. After hearing oral argument the Court took the matter under advisement.

## II. JURISDICTION

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 & § 157(b)(1), (b)(2)(A), (B), & (O).

## III. DISCUSSION

■ Martin asserts that she has a post-petition administrative claim for indemnity against the Debtors under In re M. Frenville Co., 744 F.2d 332 (3d Cir.1984), which held that a common law indemnity claim arose post-petition when the movant was sued, not pre-petition when the debtor's allegedly fraudulent acts occurred.

■ The Trust asserts that Frenville is not applicable and should, at any rate, be overruled. The Court, of course, cannot overrule Frenville and is bound by its holding. Bankruptcy courts "are bound by the law of their own circuit. . . . They are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be." See Hasbrouck v. Texaco, Inc., 663 F.2d 930, 933 (9th Cir.1981) (citations omitted).

Frenville instructs the Court to ascertain when the claim arose under state law, that is, "at what point [the claimant] has a 'right to payment' for its claim for indemnification." 744 F.2d at 335. In Frenville, New York common law provided that a

claim for indemnity did not arise when the fraudulent acts occurred but only when suit was filed. In performing its analysis, however, the Third Circuit acknowledged that

> The present case is different from one involving an indemnity or surety contract. When parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent, upon the signing of the agreement.

*Id.* at 336. *See also In re Pinnacle Brands, Inc.*, 259 B.R. 46, 50–51 (Bankr. D.Del.2001) (holding that indemnification claim based on contract executed pre-petition was a pre-petition claim); *In re Mid-American Waste Systems, Inc.*, 228 B.R. 816, 821–22 (Bankr.D.Del.1999) (holding that indemnification claim arising under debtor's certificate of incorporation for pre-petition actions of debtor's officers was pre-petition claim); *In re Pennsylvania Truck Lines, Inc.*, 189 B.R. 331, 334 (Bankr.E.D.Pa.1995) (concluding that claim for indemnity under pre-petition contract was a pre-petition claim under *Frenville*).

The Trust argues that this case is distinguishable from the facts of *Frenville* and fits within the exception noted by *Frenville:* that contract claims for indemnity arise when the contract is signed, not when the underlying cause of action accrues. 744 F.2d at 336. The Trust asserts that in this case Martin's claim for indemnity arises under statute, not under common law, and asserts that the statute supports its argument. The Trust cites to the portion of the Minnesota statute which provides that "[w]henever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of acci-dent, be deemed the agent of the owner of such motor vehicle in the operation thereof." Minn.Stat. § 170.54 [renumbered § 169.09, subd. 5a]. The Trust argues, therefore, that Martin's indemnification rights arose when she signed the car rental agreement, which is the applicable contract. Because Martin signed the contract pre-petition, the Trust contends that Martin has only a pre-petition claim.

Martin responds that her indemnity claim does not arise under the section cited by the Trust but instead arises under Minn.Stat. § 65B.49, subd. 5a(i)(2). The latter section caps the vicarious liability that a car rental agency otherwise has under Minnesota law so long as it has "in effect, at the time of the accident, a policy of insurance or self-insurance" that meets certain statutory requirements. *Id.* According to Martin, it was not until the Minnesota Court determined that the Debtors had not complied with the statutory requirements that Martin's claim for indemnity arose.

To settle this dispute the Court must look to the conclusions of the Minnesota Court to determine on what basis and when the indemnification claim arose. It is true, as the Trust contends, that the Minnesota Court concluded that the Debtors were vicariously liable for the negligence of Martin under Minn.Stat. § 170.54 [renumbered § 169.09, subd. 5a]. (*See* Order dated September 24, 2003, at Findings of Fact ¶ 2.) However, that was the basis for its conclusion that the Debtors were liable to the Plaintiffs, not to Martin. (*Id.* at Conclusions of Law ¶ 1.)

The issue of who (between the Debtors and Martin) would be primarily liable was addressed by the Minnesota Court in its October 31, 2003, ruling. In that Order, the Minnesota Court found that the Debtors had not complied with the self-insurance requirements of the Minnesota Stat-

ute. (*See* October 31, 2003, Order at Findings of Fact ¶ 5.) As a result, the Court concluded that the Debtors were primarily liable (and owed an indemnification obligation to Martin). That decision was founded on Minnesota case law. *See, e.g., Hertz Corp. v. State Farm Mut. Ins. Co.,* 573 N.W.2d 686 (Minn.1998). The Court in *Hertz* held that: "A self-insured car rental agency does not meet its obligations as an automobile owner under the No–Fault Act by thrusting upon the renter its responsibility to provide liability coverage—that is, by providing liability coverage only in the event that the renter is without liability coverage." *Id.* at 688–89. Thus, the *Hertz* Court held that an agreement restricting the car rental agency's liability was unenforceable as against public policy and that, as the owner of the vehicle, the car rental agency was primarily liable for the damages caused by the renter's accident. *Id.*

Because the Debtors had not complied with the Minnesota statute, the Minnesota Court similarly held that the Debtors' insurance coverage was primary—that is, the Debtors were primarily liable, before Martin, for payment of the Plaintiffs' injuries. (*See* October 31, 2003, Order at Conclusions of Law ¶ 5.) Accordingly, the Minnesota Court concluded that the Debtors would be treated as a self-insured entity with no cap and with a policy providing for indemnification for the driver, Martin. *Id.*

Based on the conclusions of the Minnesota Court, the Court must conclude that Martin's claim is a pre-petition claim. The premise of the Minnesota Court's decision is that the Debtors must be deemed to have a contract of indemnity with Martin that has no cap. *Id.* In other words, the indemnification obligation was an implied-at-law term of the *actual* contract between the Debtors and Martin. Therefore, the

Debtors' obligation to indemnify Martin arose when the contract arose, i.e., when the car rental agreement was executed. Because the car rental agreement was executed pre-petition, the indemnification obligation similarly arose pre-petition. *Frenville,* 744 F.2d at 336.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the Motion of Marjorie Joan Martin for Allowance and Immediate Payment of Administrative Claim.

An appropriate order is attached.

### ORDER

AND NOW, this **28th** day of **APRIL, 2006,** upon consideration of the Motion of Marjorie Joan Martin for Allowance and Immediate Payment of Administrative Claim and the response of the Trust thereto, and for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that the Motion is **DE-NIED.**